## A00A1453. NEALY v. THE STATE.
(542 SE2d 521)

ANDREWS, Presiding Judge.

Ronald Nealy appeals from denial of his motion for new trial following his conviction of aggravated assault.[1]

Viewed with all inferences in favor of the jury's verdict, *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), the evidence was that, on the evening of November 24, 1995, a group of people, including Nealy and Jefferson, were congregated in front of a neighborhood store at the corner of Lucille and Holderness in West End, an Atlanta neighborhood. Nealy, known as "Ron Ron," was selling marijuana. At approximately 7:00 p.m., Clarence Poon was walking toward the intersection when a burgundy four-door Buick pulled up to the curb in front of the store. Four men got out of the car, and at least one was carrying a firearm. One of the men, known as "Dray," appeared to be trying to get behind Nealy. Nealy asked what was up, and none of the men responded. Nealy then said, "Okay, I got something for that," and walked across the street toward a vacant apartment building. At that point, Jefferson crossed the street near Poon and both men were walking down Holderness. Jefferson saw Rodney, one of the four men in the car, come out of the store and start to get in the car. Poon told Jefferson to go back and tell these guys to leave because there was a weapon, which Poon described as an AK-47, pointed at them. As Jefferson walked back down the street, shots came from the vacant apartment building across the street from the store as well as from the Buick. Jefferson testified that "I saw Ron [Nealy] shooting a gun. He was like kneeled down and he was shooting out of the window at the car." Jefferson ran across a vacant lot and saw Poon running down Holderness. Poon was struck in the back by a .40 caliber bullet and bled to death. The medical examiner opined that, based on the location of Poon's wound and the bullet's path through his body, Poon had been running up Holderness or crouching when hit. Further, in his opinion, the bullet which struck Poon was most likely fired from the apartment building. Spent .40 caliber shells were found by the police in an upstairs apartment near a window, as well as some .9 millimeter shells. Shells from a .9 millimeter were also found on the sidewalk in front of the store.

The evidence was legally sufficient. *Jackson*, supra.

1. Nealy's first enumeration is that the trial court erred in allowing into evidence the fact that, when arrested on December 20, 1995, he was wearing a bulletproof vest.

---

[1] Nealy was also convicted of possession of a firearm by a convicted felon, but the trial court granted the motion for new trial on that conviction and it is not before us. Nealy was acquitted of murder and felony murder.

As recently discussed in *Benford v. State*, 272 Ga. 348, 350 (3) (528 SE2d 795) (2000),

> the admission of evidence which shows the commission of another crime may not automatically be admitted solely on the basis that the evidence was incident to an accused's arrest where the evidence is wholly unrelated to the charged crime, the arrest is remote in time from the charged crime, and the evidence is not otherwise shown to be relevant. See *Crosby [v. State*, 269 Ga. 434 (498 SE2d 62) (1998)]; *Ivester v. State*, 252 Ga. 333 (2) (313 SE2d 674) (1984); *Bixby v. State*, 234 Ga. 812 (1) (218 SE2d 609) (1975). Just as evidence of the circumstances connected with an accused's arrest is not automatically prejudicial neither is it automatically relevant. Rather, such evidence is subject to the same standard of relevancy and materiality applicable to other evidence. Thus, "the admission or exclusion of this evidence 'lies within the sound discretion of the trial court, whose decision will not be disturbed on appeal absent a clear abuse of discretion.' (Cit.)" *Johnson v. State*, 272 Ga. 254, 257 (1) (526 SE2d 549) (2000).

Under this standard and pretermitting the fact that there was no showing that possession of a bulletproof vest was illegal, we find that the trial court properly concluded that, under the facts of this case involving a multiple weapon shootout 26 days earlier in the same neighborhood in which Nealy was arrested, his wearing of a bulletproof vest was relevant. *Benford*, supra; *Gagnon v. State*, 240 Ga. App. 754, 757 (6) (525 SE2d 127) (1999).

2. The second enumeration is that the trial court erred "in reseating jurors number 23, 24 and 28" after Nealy had used peremptory strikes against them.

The trial court upheld the challenges of the State to Nealy's use of peremptory challenges against those three jurors pursuant to *Georgia v. McCollum*, 505 U. S. 42 (112 SC 2348, 120 LE2d 33) (1992). See *Morris v. State*, 243 Ga. App. 824, 826 (2) (534 SE2d 509) (2000).

Although the enumeration is as set out above, Nealy acknowledges in his argument that a trial court, having found the State's *McCollum* challenge meritorious, may reseat the affected jurors. *McKibbons v. State*, 216 Ga. App. 389, 391 (1) (455 SE2d 293) (1995).

The argument then made is that the trial court erred in failing to use the "silent strike" method and allowing the jurors to know which party had used a strike on them. Pretermitting that this ground is not enumerated as error, no authority is cited by Nealy, and we are

aware of none, that indicates that the silent strike method is mandated. See Uniform Superior Court Rule 11. Therefore, this ground is without merit. See *Morris*, supra; *Curry v. State*, 238 Ga. App. 511, 513 (1) (519 SE2d 269) (1999); *Ware v. State*, 232 Ga. App. 165, 166 (2) (500 SE2d 601) (1998).

3. Nealy's third enumeration asserts error in the trial court's denial of his motion for new trial alleging that his trial counsel was ineffective because she failed to file a demand for speedy trial.

Nealy contends that the 18-month delay from the time of his arrest on December 20, 1995, until his trial beginning June 30, 1997, violated his right under the Sixth Amendment of the United States Constitution to a speedy trial. Nealy's speedy trial claim is analyzed under the four factors set forth in *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972): (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) the prejudice to the defendant.

(1) *Length of delay*. Although mere passage of time, standing alone, does not compel a finding that the right to a speedy trial was violated, the passage of 18 months is sufficient to trigger inquiry into the other *Barker* factors. *Obiozor v. State*, 213 Ga. App. 523, 524 (445 SE2d 553) (1994).

(2) *Reasons for the delay*. Nealy was arrested pursuant to an arrest warrant concerning these charges. Although a bond was set, he was unable to post bond and remained in jail. He was originally indicted on April 26, 1996, slightly more than four months after his arrest. Although he was reindicted on June 3, 1997, we consider the timing of the initial indictment for the *Barker* inquiry.

Although the delay is considered to be caused by the State's negligence, *Boseman v. State*, 263 Ga. 730, 733 (438 SE2d 626) (1994), because there is no evidence that the State deliberately delayed the trial to hamper the defense, the unexplained delay is relatively benign. *Johnson v. State*, 268 Ga. 416, 418 (490 SE2d 91) (1997); *Collingsworth v. State*, 224 Ga. App. 363, 365 (1) (480 SE2d 370) (1997); *Obiozor*, 213 Ga. App. at 525.

(3) *Nealy's assertion of his right to a speedy trial*. The record shows that Nealy failed to assert either his statutory or constitutional right to a speedy trial until November 14, 1996, when he filed a pro se demand. This was nearly eleven months after his arrest and seven months after the original indictment. Accordingly, this factor weighs against Nealy's claim that he was denied a speedy trial. *Haisman v. State*, 242 Ga. 896, 898-899 (252 SE2d 397) (1979).

(4) *Prejudice to Nealy's defense*. Prejudice is the factor weighed most heavily in determining whether the constitutional right to a speedy trial has been violated. *Jernigan v. State*, 239 Ga. App. 65, 67 (517 SE2d 370) (1999). Nealy has failed to show any evidence that he

was exposed to substandard jail conditions or that he suffered undue anxiety or concern. *Hall v. State*, 240 Ga. App. 356, 358 (3) (523 SE2d 409) (1999).

In fact, his argument is merely that anyone in jail facing a murder charge would experience anxiety and concern. This is not enough to require balancing this factor in his favor. Nor did Nealy show prejudice to his defense as a result of the delay. He argues only that the State used the additional time to add charges of possession of a firearm by a convicted felon and felony murder. Since, however, a new trial has been granted on the possession of firearm charge and Nealy was acquitted of felony murder, no prejudice can be shown. This factor is weighed against Nealy.

Balancing all four *Barker* factors, we find that the 18-month delay did not violate Nealy's constitutional right to a speedy trial. It follows from this finding that, even if Nealy's trial counsel performed deficiently by failing to raise the speedy trial claim, Nealy cannot demonstrate that this failure prejudiced his defense. Accordingly, Nealy's ineffective assistance of counsel claim also fails. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

4. Nealy enumerates as error the trial court's allowing the written statement of Marva Jones to go out with the jury.

During the hearing on the motion for new trial, trial counsel for Nealy appeared as a witness and the State and Nealy were represented by new counsel. After the hearing on the motion, the trial court entered its order of August 11, 1999, finding that it was "generally this Court's practice to disallow such statements from going to the jury room, and there is nothing in the record which indicates that these statements were taken to the jury room in this case. [Cits.]" The parties were given ten days from the date of that order to submit any documentation regarding the issue, absent which, the motion was denied on that ground.

No such documentation was submitted, and there is, therefore, nothing for us to review in this regard. *Kitchens v. State*, 198 Ga. App. 284, 286 (5) (401 SE2d 552) (1991).

5. Finally, Nealy contends that the trial court's charge on aggravated assault was error.

The indictment charged that Nealy did "unlawfully commit an assault upon the person of Clarence Poon by shooting him with a handgun, the same being a deadly weapon." Nealy claims that the trial court's charge explaining two of the three methods by which aggravated assault may be committed, OCGA § 16-5-21 (a) (1) and (2), was reversible error.

While the trial court did, during its instructions, define two methods of committing aggravated assault, this portion of the charge is not considered in a vacuum. "[T]he charge to the jury is to be taken

as a whole and not out of context when making determinations as to the correctness of same." (Punctuation omitted.) *Redd v. State*, 232 Ga. App. 666, 667 (2) (b) (502 SE2d 467) (1998). See also *Sabree v. State*, 195 Ga. App. 135, 139 (9) (392 SE2d 886) (1990).

Here, the trial court read the indictment to the jury at the beginning of the instructions. The trial court instructed that the State bore the burden of proving every material allegation of the indictment, "including the method of carrying out the alleged crime"; that, if the jury believed Nealy used force against the alleged victim "in the way and manner alleged in the indictment . . . ," they could convict; and that, if they found Nealy did "as accused in the indictment in the manner it was accused commit any of the charges he has been indicted for," the jury would be authorized to convict.

Therefore, based on the charge as a whole, we do not believe Nealy has shown that his due process rights were violated by raising a reasonable probability that the jury convicted him of the commission of the crime in a manner not charged in the indictment. *Wright v. State*, 240 Ga. App. 763, 765 (3) (525 SE2d 143) (1999).

*Judgment affirmed. Ruffin and Ellington, JJ., concur.*

DECIDED NOVEMBER 9, 2000.

*David D. Bishop*, for appellant.

*Paul L. Howard, Jr., District Attorney, George W. K. Snyder, Jr., Assistant District Attorney*, for appellee.